IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

NATHANIEL STORMS,

                                    Plaintiff,

                                                            Civil Action No.
            vs.                                             9:05-CV-1115 (DNH/DEP)

PAUL HARRIMAN, *et al.*,

                                    Defendants.

_____


APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

NATHANIEL STORMS, *Pro Se*
02-A-1689
Attica Correctional Facility
Box 149
Attica, NY 14011

FOR DEFENDANTS:

HON. ANDREW M. CUOMO                 DEAN J. HIGGINS, ESQ.
Office of Attorney General           Assistant Attorney General
State of New York
The Capitol
Litigation Bureau
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Nathaniel Storms, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983 against three corrections workers employed at the facility in which he was confined at the relevant times, alleging deprivation of his civil rights.  In his complaint plaintiff maintains that he was subjected to harassment and retaliation, and additionally denied pain medication over an nineteen-day period, by defendant Paul Harriman, a registered nurse, and that defendants T. Brousseau and Ms. Ratliff failed to process grievances and complaints lodged by Storms regarding Harriman's activities.  Plaintiff's complaint asserts causes of action under the First, Eighth, and Fourteenth Amendments to the United States Constitution, and seeks recovery of damages in the amount of $500,000 on each of his ten claims.[1]

Currently pending before the court is an application by the

---

[1]   Plaintiff's complaint, as amended, also references the Fourth Amendment, which prohibits unreasonable searches and seizures, and the Fifteenth, guarantying that the right of citizens to vote not be denied "on account of race, color, or previous condition or servitude."  *See* U.S. Const. Amends. 4, 15.  Discerning no basis to conclude that plaintiff's complaint asserts a cognizable claim under either of these amendments, I have not addressed those potential causes of action in this report, nor for that matter have either of the parties in their briefs concerning the pending motion.

defendants seeking the entry of summary judgment dismissing plaintiff's claims on the merits, as a matter of law.  Having carefully reviewed the record now before the court in the light of the parties' arguments, I conclude that no reasonable factfinder could determine plaintiff's constitutional rights were abridged by defendants' actions.  Accordingly, I recommend that their motion be granted.

I.     BACKGROUND[2]

Plaintiff is a prison inmate presently serving a sentence of between sixteen years and life in the custody of the New York State Department of Correctional Services ("DOCS").   Amended Complaint (Dkt. No. 25) ¶¶ 2, 8.  At the times relevant to the claims set forth in his complaint, as amended, plaintiff was designated to the Clinton Correctional Facility ("Clinton"), located in Dannemora, New York.  *Id.* ¶¶ 6.

This action is an outgrowth of a disagreement arising between the plaintiff and defendant Harriman, a registered nurse at Clinton, regarding the manner in which Storms' prescribed pain medication, Ultram, was to be

---

[2]     In light of the procedural posture of the case the following recitation is drawn from the record now before the court, with all inferences drawn, and ambiguities resolved, in favor of the plaintiff.  *See Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007) (citations omitted).

administered.  Amended Complaint (Dkt. No. 25) ¶¶ 12-15;  Harriman Aff.

(Dkt. No. 56-5) ¶¶ 4-13.  In accordance with established DOCS policy

calculated to insure that the inmate has swallowed the medication and it is

not being abused, Harriman routinely ordered Storms to submit to a mouth

inspection when dispensing Ultram to him.[3]  Harriman Aff. (Dkt. No. 56-5)

¶¶ 5-6.  Storms maintains that beginning in or about mid-2004 defendant

Harriman began implementing this policy in a harassing manner, giving

Storms mouth inspection instructions which he viewed as sexually

suggestive and demeaning.  Amended Complaint (Dkt. No. 25) ¶¶ 12-15.

Plaintiff's resistence to the specified mouth inspection protocol and

defendant Harriman's insistence that he comply with the prescribed

procedures led plaintiff to advise Harriman he was contemplating the filing

of a grievance to end the harassment.[4]  Amended Complaint (Dkt. No. 25)

¶ 15.  The following day plaintiff was served with an inmate misbehavior

---

[3]    During his deposition Storms acknowledged that he was addicted to his pain
medication.  *See* Defendants' Exhibits (Dkt. No. 56-21) Exh. N at p. 36.

[4]    Plaintiff's amended complaint and supporting affidavit allege that Storms
authored a written grievance regarding the matter.  Amended Complaint (Dkt. No.
25) ¶ 15; Plaintiff's Memo of Law (Dkt. No. 61-3) ¶ 4.  While in his affidavit plaintiff
maintains that the March 14, 2005 grievance is attached as Exhibit B-2; there is no
exhibit bearing that label, nor does it appear that the grievance is located elsewhere
in the record.  Plaintiff's March 14, 2005 grievance does not appear to have been
assigned a grievance number, nor was it processed by inmate grievance personnel
at the facility.  *See* Brousseau Aff. (Dkt. No. 56-4) ¶¶ 5-6, 8.

report, authored by defendant Harriman and dated March 14, 2005,

charging Storms with verbal harassment (Disciplinary Rule 107.11) and

failure to obey a direct order (Disciplinary Rule 106.10).  See Plaintiff's

Exhibits (Dkt. No. 61-4) Exh. C.  A Tier II disciplinary hearing was

conducted to address those charges on March 28, 2005.[5]  Defendants'

Exhibits (Dkt. No. 56-11) Exh. F.  At the close of that hearing plaintiff was

found guilty on both counts and was sentenced to twenty-one days of

keeplock confinement, a penalty suspended for a period of ninety days,

together with a corresponding loss of telephone, commissary packages

and recreation privileges.[6]  *Id.*

---

[5]    The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace,* 143 F.3d 653, 655 n.1 (2d Cir.1998), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

[6]    Keeplock is a form of confinement restricting an inmate to his or her cell, separating the inmate from others, and depriving him or her of participation in normal prison activities.  *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *Warburton v. Goord*, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998) (citing *Gittens*); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL 160124, at *2 n.2 (N.D.N.Y. Mar. 31, 1997) (Pooler, D.J. & Homer, M.J.) (citing, *inter alia, Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)).  Inmate conditions while keeplocked are substantially the same as in the general population.  *Lee v. Coughlin*, 26 F. Supp. 2d 615, 628 (S.D.N.Y. 1998).  While on keeplock confinement an inmate is confined to his or her general population cell for twenty-three hours a day, with one hour for exercise.  *Id.* Keeplocked inmates can leave their cells for showers, visits, medical exams and counseling, and can have cell study, books and periodicals.  *Id.*  The primary

On March 15, 2005, plaintiff filed a formal grievance, assigned No.

CL-50976-05, alleging that the issuance of a misbehavior report by

defendant Harriman constituted harassment and retaliation.[7]  Amended

Complaint (Dkt. No. 25) ¶ 16; Defendants' Exhibits (Dkt. No. 56-8) Exh. C.

This grievance was denied at the facility level (*see* Defendants' Exhibits

(Dkt. No. 56-8) Exh. C) and that determination was upheld on appeal to the

DOCS Central Office Review Committee ("CORC") on June 29, 2005.

Plaintiff's Exhibits (Dkt. No. 61-4) Exh. R9.

Having obtained no relief from defendant Harriman's alleged

continued harassment, on March 25, 2005 plaintiff wrote to Dale Artus, the

Superintendent at Clinton, complaining of the situation, and additionally

filed another grievance, designated as No. CL-51049-05, regarding the

matter.[8]  Defendants' Exhibits (Dkt. No 56-9) Exh. D.; *see also* Plaintiff's

Exhibits (Dkt. No. 61-4) Exhs. E and F.  That grievance was denied at the

difference between keeplock and the general population confinement conditions is
that keeplocked inmates do not leave their cells for out-of-cell programs, and are
usually allowed less time out of their cells on the weekends.  *Id.*

[7] Plaintiff claims to have filed this grievance on March 14, 2005.  (Amended
Complaint (Dkt. No. 25) ¶15.  While the handwritten grievance is dated March 15,
2005, it is stamped as having been filed March 21, 2005.  Plaintiff's Exhibits (Dkt.
No 61-4) Exh. B2.

[8] While that handwritten grievance was dated March 25, 2005 by the plaintiff,
it is stamped as "filed" on March 28, 2005.  *See* Defendants' Exhibits (Dkt. No. 56-
9) Exh. D.

local facility level, and that denial was upheld by the CORC on June 22, 2005.  Plaintiff's Exhibits (Dkt. No. 61-4) Exh. R8.  In its determination, the "CORC advise[d] the grievant to cooperate with medical during the distribution of 1:1 medication."  *Id.*

On March 26, 2005 defendant Harriman authored a second misbehavior report regarding the plaintiff's failure to cooperate with the administering of his pain medication; that disciplinary charge, which accused plaintiff of interference (Disciplinary Rule 107.10) and failure to obey a direct order (Disciplinary Rule 106.10), was served on March 27, 2005.  Plaintiff's Exhibits (Dkt. No. 61-4) Exh. G.  A Tier II hearing was held to address that misbehavior report, also on March 28, 2005.   Defendants' Exhibits (Dkt. No. 56-11) Exh. F.  At the conclusion of that proceeding the hearing officer found Storms guilty on both counts, and imposed punishment of twenty days of keeplock confinement, with a corresponding loss of telephone, commissary package and recreation privileges.  *Id.*  That decision was affirmed upon plaintiff's appeal.  Plaintiff's Exhibits (Dkt. 61-4) Exh. J3B.

Over the ensuing period beginning in April of 2005 and continuing through August 25, 2005, when plaintiff prepared and forwarded to the

court a complaint alleging civil rights violations against defendant Harriman

arising out of the events recounted, plaintiff embarked upon an intensive

campaign to obtain redress of his grievances.[9]  Amended Complaint (Dkt.

No. 25) ¶¶ 22-39.  Those efforts included the sending of letters to

defendants Brousseau and Ratliff, both of whom serve as Inmate

Grievance Program ("IGP") supervisors at Clinton, as well as

Superintendent Artus and Nurse Administrator Tousigant.  *Id.*

Plaintiff asserts that between September 2, 2005, when this action

was commenced and September 21, 2005, defendant Harriman continued

to harass him, including by refusing to provide him with his required pain

medication.  Amended Complaint (Dkt. No. 25) ¶¶ 37-38, 40.  Plaintiff

contends that the harassment resulted in the denial of pain medication,

_____

[9]    Although not specifically referenced in either his amended complaint or
motion opposition papers, plaintiff claims to have filed a third grievance in March of
2005.  Plaintiff's Aff. (Dkt. 61) p.2; *see also* Plaintiff's Exhibits (Dkt. No. 61-4) Exh.
U1.  Apparently, the IGRC did not receive the third grievance until July 13, 2005.
Plaintiff's Exhibits (Dkt. 61-4) Exh. W; *see also* Ratliff Aff. (Dkt. No. 56-6) ¶ 6;
Brousseau Aff. (Dkt. No. 56-4) ¶ 7.  This third grievance, also complaining of
harassment by Harriman, was assigned number 51614-05 and was investigated
and denied.  *Id.*  It was noted that Harriman was interviewed and denied
harassment or mistreatment of Storms, and that Storms was interviewed and had
no information to add and did not request any witnesses to be interviewed. *Id.*  The
grievance was similarly rejected on appeal to the CORC by determination issued on
August 17, 2005.  Plaintiff's Exhibits (Dkt. 61-5) Exh. YY-4.  In its determination the
CORC noted that it had found no evidence of mistreatment of the plaintiff by any
DOCS employee, adding "CORC asserts that grievant's medication is administered
as ordered by the FHSD and advises the grievant to cooperate with medical staff
during the distribution of 1:1 medications."  *Id.*

beginning on September 2, 2005.  *Id.* ¶ 38.  According to Storms, it was

only after he wrote several letters, including to Superintendent Artus,

Deputy Superintendent Turner, Dr. Wright, the facility chaplin, and various

outside individuals and organizations, that prison officials once again

began administering his medication on September 21, 2005.[10]   *Id.* ¶¶ 39-

40.  Plaintiff attributes the denial of pain medication to ongoing efforts on

the part of defendant Harriman to retaliate against him for engaging in

protected activity.  *Id.* ¶ 41.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on September 2, 2005, and later

amended his complaint, with leave of court, on January 10, 2007.  Dkt.

Nos. 1, 24, 25.  As defendants plaintiff's amended complaint names

Registered Nurse Paul Harriman, as well as Ms. T. Brousseau and Ms.

Ratliff, both of whom are identified as IGP supervisors at Clinton, and

asserts ten causes of action including six against defendant Harriman, and

two each against defendants Brousseau and Ratliff.

Following joinder of issue and the close of discovery, defendants

---

[10]   Plaintiff's pain medication was resumed under a newly-implemented policy requiring that his medication be crushed before being administered.  *See* Defendants' Exhibits (Dkt. No. 56-19) Exh. M; *see also* Harriman Aff. (Dkt. No. 56-5) ¶ 12.

moved on June 1, 2008 for the entry of summary judgment dismissing

plaintiff's claims on the merits.  Dkt. No. 56.   Plaintiff has since responded

in opposition to the motion by the filing, on July 28, 2008, of a

memorandum, statement pursuant to Local Rule 7.1(a)(3), affidavit, and

exhibits.[11]  Dkt. No. 61.

Defendants' motion, which is now ripe for determination, has been

referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal

---

[11]   Plaintiff's Local Rule 7.1(a)(3) Statement fails to conform to this court's requirements in that it does not specifically address each of the facts set forth in defendants' Local Rule 7.1(a)(3) Statement by either admitting or denying those assertions.  By its terms, Local Rule 7.1(a)(3) provides that "[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert ."  *See* N.D.N.Y.L.R. 7.1(a)(3)(emphasis in original).  Courts in this district have not hesitated to enforce Rule 7.1(a)(3) and its predecessor, Rule 7.1(f), by deeming facts admitted upon an opposing party's failure to properly respond.  *See, e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).  While in no way minimizing the importance of the requirement, in light of my finding that the record now before the court does not support any of plaintiff's claims, and in deference to his *pro se* status, I have chosen not to invoke this provision of Local Rule 7.1(a)(3).

Rules of Civil Procedure.  Under that provision, the entry of summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2509-10).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

A moving party seeking the entry of summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.

*Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, to successfully resist the entry of summary judgment they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  The entry of summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party.  *See Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002)

(citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

      B.   Medical Indifference

Among plaintiff's claims in this action is his assertion that defendant Harriman was deliberately indifferent to his medical needs, based upon his actions in administering Storms' prescribed pain medication.  Defendants seek dismissal of that cause of action, both based upon plaintiff's failure to establish the existence of a serious medical condition of constitutional significance and in light of the lack of evidence demonstrating Harriman's indifference.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble,* 429 U.S. 97, 103, 104, 97 S. Ct. 285, 290- 291 (1976) (quotations and citations omitted); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia*, *Estelle,* 429 U.S. at 103, 97 S. Ct. at 290).  While the Eighth Amendment does not mandate comfortable

prisons, neither does it tolerate inhumane treatment of those in confinement; accordingly, the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing, *inter alia*, *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400 (1981)).  A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement; the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference." *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (citations omitted).

### 1.    Serious Medical Need

Claims that prison officials have intentionally disregarded a plaintiff's medical needs are encompassed within the Eighth Amendment's prohibition of cruel and unusual punishment.  In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must first allege a deprivation involving a medical need which is, in objective terms,

"'sufficiently serious'".  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)

(quoting *Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324), *cert. denied sub*

*nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108 (1995).  A

medical need is serious for constitutional purposes if it presents "'a

condition of urgency' that may result in 'degeneration' or 'extreme pain'."

*Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted).

A serious medical need can also exist where "'failure to treat a prisoner's

condition could result in further significant injury or the unnecessary and

wanton infliction of pain'"; since medical conditions vary in severity, a

decision to leave a condition untreated may or may not be unconstitutional,

depending on the facts.  *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir.

2000) (quoting, *inter alia*, *Chance*, 143 F.3d at 702).  Relevant factors

informing this determination include whether the plaintiff suffers from an

injury that a "'reasonable doctor or patient would find important and worthy

of comment or treatment'", a condition that "'significantly affects'" a

prisoner's daily activities, or "'the existence of chronic and substantial

pain.'"  *Chance*, 143 F.3d at 701 (citation omitted); *LaFave v. Clinton*

*County*, No. CIV. 9:00CV774, 2002 WL 31309244, at *3 (N.D.N.Y. Apr. 3,

2002) (Sharpe, M.J.) (citation omitted).

In this instance plaintiff has failed to offer evidence regarding the severity of the condition for which he was receiving the pain medication at the center of his claims.  The limited medical records supplied by Storms reflect that at various times during the relevant period he complained of lower back pain, which was treated through physical therapy and pain medication.  *See* Plaintiff's Exhibits (Dkt. No. 61-5) Exh. Z.  Plaintiff's records also disclose that he was sent in November of 2003 to an outside orthopedic surgeon for evaluation of his back condition.  Plaintiff's Exhibits (Dkt. No. 61-5) Exh. Z-26.  As a result of that examination the outside consultant diagnosed the plaintiff as suffering from chronic low back pain, with evidence of some early degenerative changes in the lower lumbar spine, adding "I think we are dealing with Mechanical Low Back Pain."  *Id.*

Having reviewed the available record, I find that plaintiff has failed to offer evidence sufficient to carry his burden of establishing that his back condition constituted a condition of urgency capable of producing degeneration or extreme pain.  Accordingly, I conclude that no reasonable factfinder could determine that plaintiff suffers from a sufficiently serious medical need to qualify for protection under the Eighth Amendment.  *See Sledge v. Kooi*, 556 F.3d 137, 140 (2d Cir. 2009).

16

2.    Deliberate Indifference

In addition to establishing the existence of a serious medical condition, to prevail on his Eighth Amendment claim plaintiff must also establish indifference to that condition on the part of one or more of the defendants. *Leach v. Dufrain,* 103 F. Supp. 2d at 546.  Deliberate indifference, in a constitutional sense, exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer,* 511 U.S. at 837, 114 S. Ct. at 1979);*Waldo v. Goord,* 1998 WL 713809, at *2 (citations omitted).

It should be noted that the Eighth Amendment does not afford prisoners a right to medical treatment of their choosing; the question of what diagnostic techniques and treatments should be administered to an inmate is a "classic example of a matter for medical judgment" and accordingly, prison medical personnel are vested with broad discretion to determine what method of care and treatment to provide to their patients. *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703

(citation omitted); *Rosales v. Coughlin*, 10 F. Supp. 2d 261, 264 (W.D.N.Y. 1998) (citation omitted).

The record now before the court fails to substantiate plaintiff's claims of deliberate indifference.  To the contrary, the limited medical records now before the court suggest that the plaintiff was seen with some degree of intensity by medical officials at Clinton for his back pain, and that various courses of treatment for that condition were attempted.  To the extent that plaintiff complains of not receiving his prescribed pain medication on certain occasions, the record firmly establishes that the deprivation stemmed from his disagreement over Nurse Harriman's insistence on complying with DOCS procedures regarding the administration of such pain medication.  *See* Harriman Aff. (Dkt. No. 56-5) ¶ 11; *see also* Defendants' Exhibits (Dkt. No. 56-17) Exhs. L and M.  Because no reasonable factfinder could conclude from the evidence now before the court that defendant Harriman was deliberately indifferent to any of plaintiff's medical needs, I recommend dismissal of plaintiff's deliberate indifference claim on this additional, independent basis.

C.   Retaliation

In addition to claiming indifference to his medical needs, plaintiff also

alleges that defendant Harriman retaliated against him for having exercised protected rights. Amended Complaint (Dkt. No. 25) ¶¶ 16, 18-20. Plaintiff's retaliation claim centers upon Harriman's issuance of misbehavior reports, allegedly in retaliation for Storms having filed grievances concerning his actions. *Id.* at ¶¶16-19. In their motion, defendants also seek dismissal of this claim. Defendants' Memo of Law (Dkt. No. 56-24) pp. 10-14.

When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a right protected under the Constitution, including the free speech provisions of the First Amendment, a cognizable retaliation claim under 42 U.S.C. § 1983 lies. *See Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988). As the Second Circuit has repeatedly cautioned, however, such claims are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus; courts must therefore approach such claims "with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)

19

(same).

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Dawes*, 239 F.3d at 492 (2d Cir. 2001).  If the plaintiff carries this burden, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct."  *Mount Healthy*, 429 U.S. at 287, 97 S. Ct. at 576. If taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

Analysis of retaliation claims thus requires careful consideration of the protected activity in which the inmate plaintiff has engaged, the

adverse action taken against him or her, and the evidence tending to link

the two.  When such claims, which are exceedingly case specific, are

alleged in only conclusory fashion and are not supported by evidence

establishing the requisite nexus between any protected activity and the

adverse action complained of, a defendant is entitled to the entry of

summary judgment dismissing plaintiff's retaliation claims.  *Flaherty*, 713

F.2d at 13.

Plaintiff's retaliation claim centers upon Harriman's issuance of three

misbehavior reports, all alleged to have falsely accused him of violating

prison rules.  Amended Complaint (Dkt. No. 25) ¶¶ 16, 19.  Standing alone,

the mere allegation that a false misbehavior report has been filed against

an inmate does not implicate constitutional conduct.  *Boddie v. Schnieder*,

105 F.3d 857, 862 (2d Cir. 1997); *Freeman v. Rideout,* 808 F.2d 949, 951

(2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S. Ct. 1273 (1988)).  The

further assertion that the false misbehavior report has been prompted by

retaliatory animus and relates to an inmate having engaged in protected

activity, however, can suffice to state a claim for retaliation.  *Franco*, 854

F.2d at 589.

When retaliation claims are grounded in the issuance of misbehavior

reports, "[t]he difficulty lies in establishing a retaliatory motive." *Barclay v. New York*, 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007).  More than a conclusory allegation of retaliatory motivation is required to survive a summary judgment motion; the "types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." *Id.* (citations omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 339 (S.D.N.Y. 2000).

While it is true that in this instance the chronology of events is mildly suggestive of retaliation, it is equally indicative of the close proximity in time between plaintiff's alleged refusal to follow defendant Harriman's orders, the filing of a grievance, and the issuance of a misbehavior report in each of the instances at issue.  On March 14, 2005, after an encounter with Nurse Harriman, plaintiff threatened to file a grievance.  *See* Amended Complaint (Dkt. No. 25) ¶ 25; Plaintiff's Exhibits (Dkt. No. 61-4) Exh. D.  An inmate misbehavior report alleging plaintiff's refusal to obey a direct order and verbal harassment was generated on that same date by Nurse Harriman, and served on plaintiff the next day.  *Id.* Exh. C.  Although

plaintiff claims that his first grievance was filed on March 14, the

handwritten grievance is dated March 15 and stamped filed March 25,

2005.  Similarly, plaintiff's second handwritten grievance is dated March 25

but stamped filed March 28, 2005.  Affording plaintiff all favorable

inferences, assuming the grievances were filed on the same day they were

written by plaintiff, the filing of formal written grievances by plaintiff on

March 15, 2005, and March 25, 2005, was followed by a second

misbehavior report, authored by Nurse Harriman on March 26, 2005.

Plaintiff's Exhibits (Dkt. No 61-4) Exhs. D, F, G.  A letter sent by plaintiff to

the Clinton Superintendent on March 27, 2005 was followed by yet another

misbehavior report authored by Nurse Harriman on that same date.  *Id.*

Exhs. H, J.

The overwhelming evidence now in the record reveals that the

sequence is symptomatic of plaintiff's disagreement and refusal to follow

the procedures directed by Nurse Harriman in administration of his

medication, leading ultimately to medical officials requiring that his

medication be crushed when administered.  *See* Defendants' Exhibits (Dkt.

No. 56-17) Exh. M.  In each of the three instances where rule violations

were alleged, plaintiff was convicted following a Tier II disciplinary hearing

of refusing to obey an order, and that determination was upheld on appeal.

Defendants' Exhibits (Dkt. No. 56-11, 56-12) Exhs. F and G.  Moreover,

each of the grievances filed by  plaintiff, alleging both harassment and

retaliation on the part of Nurse Harriman, were rejected and those

rejections were upheld on appeal to the CORC.  Plaintiff's Exhibits (Dkt.

No. 61-4, 61-5) Exhs. M2, M3, R8, R9, W, YY4.

Simply stated, there is nothing in the record from which a reasonable

factfinder could determine that the issuance by Nurse Harriman of

misbehavior reports to the plaintiff was in retaliation for his having engaged

in protected activity, as distinct from his refusal to obey legitimate

directives by prison officials.  I therefore recommend dismissal of plaintiff's

retaliation cause of action.

### D.   Conditions of Confinement

Plaintiff's conditions of confinement cause of action is analyzed

applying the same basic Eighth Amendment principles applicable to his

medical indifference claim.  *Farmer,* 511 U.S. at 834.

The record in this case lacks any evidence that over the course of his

incarceration at Clinton, plaintiff was subjected to prison conditions rising to

a level sufficient to sustain an Eighth Amendment claim.  Even assuming

Storms was placed in keeplock confinement as a result of defendant
Harriman's issuance of misbehavior reports, and that he or another of the
named defendants were personally responsible for having done so, it is
well established that the normal conditions experienced by a keeplocked
inmate are not sufficiently egregious to support an Eighth Amendment
cause of action. *McDonald v. Rivera*, No. 9:06-CV-410(LEK/DEP), 2008
WL 268345, at *8 (N.D.N.Y. Jan. 30, 2008), citing *Jackson v. Johnson*, 15.
F. Supp. 2d 341, 363 (S.D.N.Y. 1998). Since plaintiff has offered no proof
that he was subjected to any significant departure from ordinary keeplock
conditions or exposed to conditions which could be viewed as potentially
running afoul of the Eighth Amendment, I recommend dismissal of his cruel
and unusual punishment claim.

    E.   <u>Handling of Grievances</u>

    At the heart of plaintiff's claims against defendants Brousseau and
Ratliff is his contention that they failed to properly process and investigate
his several grievances lodged by him against defendant Harriman.
Amended Complaint (Dkt. No. 25) ¶¶23-36. In their motion, defendants
also seek dismissal of this cause of action as not cognizable under section
1983. Defendants' Memo of Law (Dkt. No. 56-24) pp. 16-17.

While the DOCS has put in place a fully integrated system for handling internal grievances by prison inmates addressing the conditions of their confinement, it is well established that the process does not confer substantive rights. *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003); *see also Mahotep v. DeLuca*, 3 F. Supp. 2d 385, 390 n.3 (W.D.N.Y. 1998). Nor is there any constitutional guaranty of access on the part of an inmate to an established grievance procedure.  *Gilbert v. Goord*, No. 9:03-cv-423 (GLS/GJD), 2007 WL 3232273, at *6 (N.D.N.Y. Oct. 31, 2007) (Sharpe, J. and DiBianco, M.J.); *see also Cancel v. Goord*, No. 00 CIV. 2042, 2001 WL 303713, at *3 (S.D.N.Y. 2001).  Accordingly, a claim predicated upon the alleged failure of prison officials to process or investigate grievances fails to support a claim under section 1983. Plaintiff's claims against defendants Brousseau and Ratliff are therefore subject to dismissal as a matter of law.

III.   <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's complaint in this action, as amended, asserts various claims all of which have as their genesis his disagreement with defendant Harriman, a registered nurse at Clinton, regarding the procedure to be followed when plaintiff received his prescription pain medication.  While

plaintiff alleges that defendant Harriman was deliberately indifferent  to his medical needs, engaged in harassing behavior toward him, and retaliated against him including through the issuance of misbehavior reports in response to grievances and other protected activity, the record is wholly devoid of any evidence to support a cognizable claim against defendant Harriman. Turning to plaintiff's claims against defendants Brousseau and Ratliff, they appear to stem solely from their alleged failure to process and investigate plaintiff's grievances, a matter which does not give rise to a cognizable claim under section 1983.  Accordingly, defendants' motion for summary judgment should be granted and plaintiff's complaint dismissed, making it unnecessary to address defendants' alternative argument, urging a finding of their entitlement to qualified immunity.

Based upon the foregoing it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 56) be GRANTED, and that plaintiff's amended complaint in this action be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days of service of this report.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

    It is hereby ORDERED that the clerk of the court serve a copy of this

Report and Recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      March 31, 2009
            Syracuse, NY